UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| TIMMY WALLACE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>FEDERAL BUREAU OF PRISONS, *et al.*, )<br>)<br>Defendants. )<br>) | Civil No. 7:22-cv-00025-GFVT<br><br>**MEMORANDUM OPINION<br>& ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Timmy Wallace is a federal inmate currently confined at the United States Penitentiary ("USP")-Canaan in Waymart, Pennsylvania. Proceeding without an attorney, Mr. Wallace previously filed a civil rights complaint against prison officials at USP-Big Sandy in Inez, Kentucky. [R. 1.] Plaintiff Wallace's original complaint did not comply with Rule 8 of the Federal Rules of Civil Procedure, as it did not contain "a short and plain statement of the claim" showing entitlement to relief, *see* Fed. R. Civ. P. 8(a)(2), nor allegations that are "simple, concise, and direct." *See* Fed. R. Civ. P. 8(d)(1). However, rather than dismissing the action, the Court entered an Order advising Wallace of the federal pleading requirements, notifying him that his current Complaint faced dismissal, and providing him with an opportunity to file an Amended Complaint, [R. 6], which Wallace has now filed. [R. 11.]

By prior Order, the Court granted Mr. Wallace's motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. [R. 12.] Thus, the Court must conduct a preliminary review of Wallace's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A. Upon initial screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim

upon which relief may be granted, or seeks monetary relief from a defendant who is obviously immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). A complaint must set forth claims in a clear and concise manner, and must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010). *See also* Fed. R. Civ. P. 8. The Court evaluates Mr. Wallace's complaint under a more lenient standard because he is not represented by an attorney. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At this stage, the Court accepts the plaintiff's factual allegations as true, and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Plaintiff Wallace's Amended Complaint seeks to bring claims against twenty-six different Defendants (including eleven unknown "Doe" Defendants) alleging violations of his constitutional rights in relation to three separate incidents.[1] He first alleges that on April 16, 2020, approximately ten unknown federal correctional officers violated his rights under the Eighth Amendment by using excessive force against Wallace after Wallace had already submitted to hand and leg restraints that were too tightly applied, causing a loss of circulation. [R. 11 at 4.] He further states that, during this incident, several officers threw Wallace to the ground and applied their knees to Wallace's back, causing him to be unable to breathe. *Id*. at 5. Mr. Wallace alleges that, as a result of the injuries that he sustained during this incident, he was prescribed 500 MG Naproxen tablets for nerve damage and pain in his right hand. *Id*. at 4. However, he also alleges that Defendants Nurse Price, Nurse Plumley, and PA W. Billiter failed

---

[1] Although grounds for severance rather than dismissal, Mr. Wallace's inclusion of numerous unrelated claims in one complaint is not proper. *Cf. Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) ("[A] complaint may present claim # 1 against Defendant A, and claim # 2 against Defendant B, only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.' Rule 20(a)(1)(A).").

2

to provide Wallace with medical treatment for his injuries in a timely matter, in violation of his Eighth Amendment rights. *Id*. at 4–5. He further alleges that Price, Plumley, and Billiter ignored his requests to be seen for medical treatment, even though Mr. Wallace went on a four-day hunger strike. *Id*. at 5–6, 12.

Plaintiff Wallace next alleges that on May 21, 2020, Defendants J. Preston, R. Miller, John Doe, and Lieutenant Melvin, as well as M. Allen (who is not named as a Defendant), violated his Eighth Amendment rights by forcing off Wallace's clothing, forcing Wallace into "see through paper like" clothing, and throwing Wallace to the ground. [R. 11 at 6.] Mr. Wallace further alleges that Officer Preston kept Wallace pinned to the ground by applying his knee and body weight to Wallace's face until Wallace heard a crack. *Id*. at 6–7. According to Wallace, Preston, Allen, Miller, and Officer Doe then lifted Wallace to his feet and Preston inappropriately grabbed Wallace's penis and placed it back into Wallace's underpants. *Id*. at 7. Wallace further alleges that Lt. Melvin struck Wallace in the back of his head and referred to him using a racial slur. *Id*. Wallace states that, after he was held in the cell where the incident occurred for approximately 30 minutes (while tightly shackled by the waist, hands, and legs), he was then taken to a cold holding cell and forced to stay shackled for 8 hours. *Id*.

Next, Wallace alleges that on August 31, 2020, he was injured after he was assaulted by his cellmate while he was sleeping, after which he received treatment for a fractured nose and broken facial bones, as well as four stitches in his lip. [R. 11 at 8–9.] Prior to this assault, Wallace claims that on August 21, 2020, his cellmate told Defendants C. Murry, K. Murry, and Adams that he would inflict bodily harm upon Wallace if he and Wallace were not separated. *Id*. at 9. However, Wallace alleges that C. Murry, K. Murry, and Adams ignored this threat. *Id.* Wallace further alleges that on August 28, 2020, his cellmate repeated his threats against

Wallace to K. Murry, Adams, Lt. Moore, and Dr. Mills.  *Id*.  According to Plaintiff Wallace, while the Defendants removed Wallace's cellmate from the cell, they later forced Wallace back into the cell with his cellmate.  *Id*. at 9–10.  He alleges that he was then assaulted by his cellmate on August 31.  *Id*. at 10.  Based upon these allegations, he claims that C. Murry, K. Murry, Adams, Lt. Moore, and Dr. Mills violated his Eighth Amendment rights by ignoring his cellmate's threats to Wallace, thus failing to protect Wallace from the assault.  *Id*. at 8.

Wallace next alleges that Defendants Horn (a counselor at USP-Big Sandy) and Case Manager Adkins ignored and/or failed to respond to grievances that Wallace filed on various occasions throughout May and June 2020.  [R. 11 at 10–12.]  Based upon these allegations, Wallace claims that Horn and Adkins violated his First Amendment right to petition the government and his Fifth Amendment right to due process of law.  *Id*. at 10.

Mr. Wallace then repeats his claim that Defendants Price, Plumley and Billiter violated his Eighth Amendment rights by repeatedly ignoring his requests to be seen for medical treatment on multiple occasions throughout April, May, and June 2020.  [R. 11 at 12.]  He then alleges that on June 3, 2020, he advised Defendant Warden Hector Joyner that Price, Plumley, and Billiter were ignoring his requests to be seen for medical treatment, but Joyner "did nothing to correct the misconduct of his staff."  *Id*. at 12–13.  According to Wallace "since [Joyner] is [Price, Plumley, and Billiter's] supervisor, Warden Joyner is also responsible for violating [Wallace's] 1st, 5th, and 8th Amendment rights since he failed to act when he was brought aware of his staff misconduct."  *Id*. at 13.

Similarly, Plaintiff Wallace also sues the Federal Bureau of Prisons ("BOP"), alleging that it "is also responsible for violating [Wallace's] First, Fifth, and Eighth amendment rights because its main Central Officer was made aware of its staff misconduct[] through [Wallace's]

4

Remedy filings to its main office, and the Federal Bureau of Prisons has failed to police its staff." [R. 11 at 13.] Finally, he alleges that staff at USP-Pollock made the administrative remedy process unavailable to him, although he clarifies that USP-Pollock staff are not defendants in this action. *Id*. at 13–14.[2]

After conducting a preliminary review of Wallace's Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, the Court finds that Wallace's allegations that he was denied medical care by Nurse Price, Nurse Plumley, and P.A. W. Billiter are sufficient to require a response from those Defendants with respect to Wallace's Eighth Amendment claims against them. Because Wallace is a prisoner, the United States Marshals Service ("USMS") will serve Nurse Price, Nurse Plumley, and P.A. W. Billiter with summons and a copy of the Amended Complaint on his behalf. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d). However, Wallace's remaining claims will all be dismissed on initial screening for failure to state a claim for which relief may be granted.

Plaintiff Wallace's claims seeking monetary relief for alleged violations of his rights under the First, Fifth, and Eighth Amendments are brought pursuant to the doctrine of *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388 (1971), which held that an individual may "recover money damages for any injuries . . . suffered as a result of [federal] agents'

---

[2] While Wallace attaches copies of documents related to multiple Form SF-95s, *Claim for Injury, Damage, or Death*, that he filed with the BOP related to the incidents alleged in his Amended Complaint [*See* R. 11-9; 11-11; 11-13], his Amended Complaint does not allege a tort claim, nor does he make any reference to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680. Rather, his Amended Complaint is specific that his claims are based upon his allegations that his constitutional rights were violated. While the Court construes *pro se* pleadings with some leniency, it cannot create claims or allegations that the plaintiff has not made. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading."); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("[L]iberal construction does not require a court to conjure allegations on a litigant's behalf.") (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

violation of" his constitutional rights. *Bivens*, 403 U.S. at 397. However, while *Bivens* authorizes suits against individual federal employees for violations of civil rights, it does not waive the sovereign immunity enjoyed by the United States and its agencies. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 370 (6th Cir. 2011) (*Bivens* claims may be asserted against federal officials only in their individual capacities); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003). Thus, Wallace may not bring a *Bivens* claim seeking monetary relief against the United States or its agencies, including the BOP. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001). Accordingly, his First, Fourth, and Eighth Amendment claims against the BOP must be dismissed for failure to state a claim for which relief may be granted.

Turning to Wallace's claims against Joyner, these claims are based upon Wallace's allegations that he reported to Joyner (the Warden) that prison staff had violated Wallace's constitutional rights, but Joyner failed to correct the staff misconduct. According to Wallace, because Joyner is the prison supervisor, he should also be held responsible for violating Wallace's First, Fifth, and Eighth Amendment rights. [R. 11 at 12–13.] However, supervisory status is an insufficient basis to pursue a *Bivens* claim against Joyner, as *respondeat superior* is not an available theory of liability. *Polk Cnty. v. Dodson*, 454 U.S. 312, 325–26 (1981). *See also Iqbal*, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer."). Nor is Joyner's response (or alleged non-response) to Wallace's grievances a sufficient basis for a *Bivens* claim against him, as prison officials are not liable for denying or failing to act on grievances. *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008). *See also Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 369 (6th Cir. 2004) (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999)). For this same reason, Wallace's First and Fifth Amendment claims against Horn and Adkins—which are

also based upon their respective responses to Wallace's grievances—must also be dismissed for failure to state a claim for which relief may be granted.

Plaintiff Wallace's remaining claims are that: (1) approximately ten John Doe correctional officers violated Wallace's Eighth Amendment rights by using excessive force against him on April 16, 2020; (2) Preston, Miller, an unknown Doe officer, and Melvin violated Wallace's Eighth Amendment rights by using excessive force against him on May 20, 2020; and (3) C. Murry, K. Murry, Adams, Moore, and Dr. Mills violated Wallace's Eighth Amendment rights by failing to protect Wallace from being assaulted by his cellmate on August 28, 2020. However, the *Bivens* remedy is a judicially-created remedy that may be implied only in limited circumstances. *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017). Wallace's Eighth Amendment claims based upon allegations of excessive force and/or failure to protect do not fall within the three existing contexts in which the United States Supreme Court has recognized a private right of action for damages for a constitutional violation.

Since *Bivens* was decided in 1971, the Supreme Court has found an implied damages action to be available in only three circumstances: (1) where federal officials search a private residence without probable cause in violation of the Fourth Amendment, *Bivens*, 403 U.S. at 397; (2) where a Congressperson terminated an employee on the basis of gender in violation of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 249 (1979); and (3) where prison officials displayed deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 24 (1980). *See Ziglar*, 582 U.S. at 131–32.

Since *Carlson* was decided over 40 years ago, the Supreme Court has "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (noting that

7

"[s]ince *Carlson* we have consistently refused to extend *Bivens* to any new context or new category of defendants."). Thus, "[w]hat started out as a presumption in favor of implied rights of action has become a firm presumption against them." *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) (explaining that since *Bivens*, *Davis*, and *Carlson*, "[s]ubsequent developments leave [the plaintiff] with a forbidding hill to climb"). The Supreme Court's directive has been clear that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar*, 582 U.S. at 135 (quoting *Iqbal*, 556 U.S. at 675). *See also Silva v. United States*, 45 F.4th 1134, 1136 (10th Cir. 2022) ("The Supreme Court's message could not be clearer—lower courts expand *Bivens* claims at their own peril.").

Under *Ziglar*, the Court must employ a two-step test to determine whether *Bivens* provides a remedy for alleged misconduct by federal officials. First, a court must decide if the plaintiff's claim presents a "new context" or involves a "new category of defendants" for application of *Bivens*. *Hernandez*, 140 S. Ct. at 743 (citations omitted). Whether the claim is presented in a "new context" is to be interpreted broadly, as a context will be regarded "as 'new' if it is 'different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court].'" *Id*. (quoting *Ziglar*, 582 U.S. at 139). A difference is "meaningful" if, for example, it involves different constitutional rights, a different category of officers as defendants, a difference in the specificity of agency actions at issue, a difference in institutional expertise, or differing risks of judicial intrusion. *Ziglar*, 582 U.S. at 139–40.

If the Court finds that a claim arises in a new context, the Court then considers whether there are "special factors counselling hesitation in the absence of affirmative action by Congress." *Ziglar*, 582 U.S. at 136 (quoting *Carlson*, 446 U.S. at 18). This inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to

8

consider and weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 136. Under this "exacting" two-part test, the answer to the question of whether a court "should engage in the 'disfavored judicial activity' of recognizing a new *Bivens* action. . . . will almost always be never." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 883 (6th Cir. 2021), *reh'g denied*, No. 20-1339, 2022 WL 326693 (6th Cir. Jan. 25, 2022). "Put another way, the most important question is who should decide whether to provide for a damages remedy, Congress or the courts? If there is a rational reason to think that the answer is Congress—as it will be in most every case—no *Bivens* action may lie." *Egbert v. Boule*, 596 U.S. 482, 491–92 (2022) (internal citations omitted). *See also Ziglar*, 582 U.S. at 135–36 ("When an issue involves a host of considerations that must be weighed and appraised, it should be committed to those who write the laws rather than those who interpret them.") (cleaned up).

In this case, Wallace's Eighth Amendment claims based upon allegations of excessive force and failure to protect both present contexts that are entirely new and different from those previously recognized by the Supreme Court as cognizable under *Bivens*. While, like the claim implied in *Carlson*, Wallace's claims sound in the Eighth Amendment, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Plainly, a prisoner's claim that excessive force was used against him by prison staff or that prison staff failed to protect him from being assaulted by his cellmate both arise in different contexts than the claim in *Carlson* of deliberate indifference to a prisoner's medical needs. *See Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (determining that the plaintiff's Eighth Amendment excessive force claim arose in a new context and was therefore "presumptively non-cognizable"); *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3

(6th Cir. Aug. 31, 2022) (federal prisoner's Eighth Amendment "failure to protect" claim presents a new context from the Eighth Amendment deliberate indifference claim in *Carlson*). Because even a "modest extension" of a prior Supreme Court case constitutes a new context, *Ziglar*, 582 U.S. at 147–48, the Court finds that the first part of the *Ziglar* test has been met here.

The Court must therefore proceed to the second step of the analysis to determine whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to these new contexts. *Ziglar*, 582 U.S. at 135–36. Because "separation of powers should be a guiding light. . . . the [Supreme] Court has told us that we must not create a cause of action if there's 'a single sound reason' to leave that choice to Congress." *Elhady*, 18 F.4th at 883 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)).

Here, there are multiple reasons that a judicially-implied remedy for damages for either of these kinds of claims is not appropriate. First, through 42 U.S.C. § 1983, Congress long ago created a statutory cause of action against state actors for violations of constitutional rights. But it has never done so for federal actors. To the contrary, more recently Congress has taken steps to curtail prisoner litigation, not expand it:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in *dicta* that the Act's exhaustion provisions would apply to *Bivens* suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Ziglar*, 582 U.S. at 148–49 (citations omitted).

Second, there are several alternative means for prisoners to vindicate their constitutional rights. For federal inmates, the BOP's inmate grievance program provides a ready and viable

10

mechanism to challenge staff misconduct. *See Malesko*, 534 U.S. at 61 (noting that the BOP's inmate grievance program "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring"). This remedy is not considered less effective merely because it is created by regulation rather than by statute. *See Egbert*, 596 U.S. at 498 ("So long as Congress *or the Executive* has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy.") (emphasis added); *Callahan*, 965 F.3d at 524 ("Alternative processes, for *Bivens* purposes, do not have to be creations of Congress.") (citation omitted). Nor is the grievance program considered a less effective remedy because it does not provide the deterrence afforded by damages. *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."). Thus, courts have consistently held that the BOP's inmate grievance program provides a viable alternative remedy counseling against inferring a remedy under *Bivens*. *Callahan*, 965 F.3d at 524; *Freedland v. Mattingly*, No. 1:20-CV-81, 2021 WL 1017253, at *8 (M.D. Pa. Mar. 17, 2021) (collecting cases).

In addition, the threat of an investigation through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct. *See Hower*, 2022 WL 16578864 at *3. "If there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Egbert*, 596 U.S. at 493 (quoting *Ziglar*, 137 S. Ct. at 1858). *See also Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").

Finally, the context of Wallace's claim is significant, as "[p]rison-based claims also present a risk of interference with prison administration." *Callahan*, 965 F.3d at 524. As the Sixth Circuit recognized in *Callahan*, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources," all tasks that fall "peculiarly within the province of the legislative and executive branches." *Id*. (quoting *Turner v. Safley*, 482 U.S. 78, 84–85 (1987)). Thus, "[g]iven the array of challenges facing prison administration and the complexity of those problems, 'separation of powers concerns counsel a policy of judicial restraint,'—counsel in favor in other words of the judiciary not creating new causes of action in this area." *Id*. (quoting *Turner*, 482 U.S. at 85).

The Supreme Court has instructed that "[i]f there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743). Thus, because multiple factors counsel strongly against implying a *Bivens* remedy for Wallace's Eighth Amendment claims alleging that excessive force was used against him and that prison staff failed to protect him from being assaulted by his cellmate, the Court will not do so here. *See Chambers v. C. Herrera*, 78 F.4th 1100, 1105–07 (9th Cir. 2023) (concluding that federal prisoner plaintiff has no relief under *Bivens* for either an Eighth Amendment claim based upon allegations of failure to protect claim or the use of excessive force); *Silva*, 45 F.4th at 1141–42 (declining to extend a *Bivens* remedy to federal prisoner's Eighth Amendment claim based on the use of excessive force against him by prison officials). *See also Hower*, 2022 WL 16578864 at *3–4 (declining to extend *Bivens* remedy to federal prisoner's Eighth Amendment failure to protect claim); *Brown v. Fed. Bureau of Prisons*, No. CV 6:22-097-DCR, 2023 WL 3934674, at *5 (E.D. Ky. June 9, 2023) ("In short, *Bivens* does not provide a monetary remedy for Brown's Eighth Amendment claims based on his

12

allegations that excessive force was used against him and his Complaint fails to state a claim for which the relief that he seeks may be granted."); *Jones v. Hurley*, No. CV 6:22-130-DCR, 2023 WL 1452049, at *5 (E.D. Ky. Feb. 1, 2023) (declining to imply *Bivens* remedy to federal prisoner's Eighth Amendment claim based upon allegations of excessive force); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *5 (E.D. Ky. Sept. 30, 2022) ("*Egbert v. Boule* forecloses Baldwin's cause of action. . . . Numerous special factors caution the hesitancy that has yielded 40+ years without an addition to the narrow Bivens triad. This case will not be the next validated category.").

Because *Bivens* does not provide a monetary remedy for Mr. Wallace's Eighth Amendment claims against 10 John Does, J. Preston, R. Miller, John Doe, and/or Lt. Melvin based upon his allegations that these individuals used excessive force against Wallace or his Eighth Amendment claims against C. Murry, K. Murry, Adams, Lt. Moore, and/or Dr. Mills based upon his allegations that these individuals failed to protect Wallace from being assaulted by his cellmate, these claims must be dismissed. *Elhady*, 18 F.4th at 884 ("Plaintiffs like Elhady often have no cause of action unless we extend *Bivens*. And if there is no cause of action, courts should stop there.").

Accordingly, it is hereby **ORDERED** as follows:

1. Plaintiff Wallace's Eighth Amendment claims against Nurse Price, Nurse Plumley, and P.A. W. Billiter based upon allegations of deliberate indifference to Wallace's serious medical needs **REMAIN PENDING**;

2. The remainder of Plaintiff Wallace's claims alleged in his Amended Complaint [R. 11] are **DISMISSED**. Because the claims against them have been dismissed, Defendants the Federal Bureau of Prisons, Hector Joyner, R. Miller, all John Doe

      Defendants, Horn, Adkins, C. Murry, K. Murry, Adams, Dr. Mills, Moore, J. Preston, and Lt. Melvin are **DISMISSED AS PARTIES;**

3. The Deputy Clerk shall prepare four (4) "Service Packets" for service upon the United States of America and Defendants Nurse Price, Nurse Plumley, and P.A. W. Billiter.  Each Service Packet shall include:

   a. a completed summons form;

   b. the Amended Complaint [R. 11];

   c. this Order;

   d. the Order granting Wallace *in forma pauperis* status [R. 12]; and

   e. a completed USM Form 285.

4. The Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket;

5. The USMS shall serve the United States of America by sending a Service Packet by certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky; and the Office of the Attorney General of the United States in Washington, D.C.;

6. The USMS shall personally serve Defendants Nurse Price, Nurse Plumley, and P.A. W. Billiter at USP-Big Sandy in Inez, Kentucky through arrangement with the Federal Bureau of Prisons;

7. Wallace must immediately advise the Clerk's Office of any change in his current mailing address.  **Failure to do so may result in dismissal of this case**; and

8. If Wallace wishes to seek relief from the Court, he must do so by filing a formal motion sent to the Clerk's Office.  Every motion Wallace files must include a

written certification that he has mailed a copy of it to the Defendants or their counsel and state the date of mailing. **The Court will disregard letters sent to the judge's chambers or motions lacking a certificate of service.**

This the 1st day of November, 2023.

Gregory F. Van Tatenhove
United States District Judge