UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| TIMMY WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 7:22-cv-00025-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Timmy Wallace, a federal inmate proceeding *pro se*, filed a Complaint pursuant to the cause of action recognized in *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Wallace alleges that Defendants Price, Plumley, and Billiter were deliberately indifferent to his serious medical needs, thus violating his rights under the Eighth Amendment. Price, Plumley, and Billiter have filed a motion to dismiss, to which Wallace filed a response, and the Defendants filed a reply. Since each side has presented matters outside the pleadings, which have been considered by the Court, the Defendants' motion will be treated as one for summary judgment. For the foregoing reasons, the Defendants' motion is **GRANTED**.

I

Wallace is serving a 180-month term of imprisonment based on his conviction for unlawfully transporting firearms in violation of 18 U.S.C. § 922(g). *See United States v. Wallace*, 1:15-cr-00794-PKC-1 (S.D.N.Y. 2015). Wallace was housed at USP Big Sandy in Inez, Kentucky, from September 16, 2019, through September 29, 2020. [*See* Dec. of Robin Eads, ¶ 3, R. 47-1, p. 2]. On July 15, 2020, Wallace filed a *pro se* Complaint in this Court

1

alleging that correctional officers used excessive force against him on April 16, 2020 and May 21, 2020, resulting in injuries to his hand, jaw, neck, back, and left knee. [Pikeville Civil No. 7:20-00095-GFVT]. He also alleged that his subsequent requests for medical care were ignored by Defendants Nurse Price, Nurse Plumley, and P.A. W. Billiter.[1] But Wallace conceded that he had not exhausted his administrative remedies. Accordingly, on August 21, 2020, the Court dismissed the Complaint without prejudice to his ability to refile the claims in a new case after completing the administrative remedy process.

Wallace filed the Complaint in the instant matter on April 7, 2022. [R. 1]. It did not comply with Rule 8 of the Federal Rules of Civil Procedure and he was permitted to file an Amended Complaint on July 5, 2022. [*See* R. 6, 11]. Wallace raised the same claims as in his previous case and also alleged that correctional officers failed to protect him from a foreseeable attack by his cellmate on August 31, 2020. Wallace also alleged that he was "denied medical treatment" following that event and that he engaged in a hunger strike which lasted for several days and was ignored. [R. 11, pp. 10, 15].

The Court performed a preliminary review of Wallace's Amended Complaint under 28 U.S.C. §§ 1915(e)(2), 1915A, and dismissed all of his claims except those against Defendants Price, Plumley, and Billiter based upon allegations of deliberate indifference to Wallace's serious medical needs pursuant to *Carlson v. Green*, 446 U.S. 14 (1980). [R. 18]. Wallace seeks 15 million dollars in damages and injunctive relief including the disclosure of his medical records.

---

[1] Wallace asserts that he tendered written sick-call requests to Plumley on April 23, 2020; May 3, 2020; May 5, 2020; May 10, 2020; and May 19, 2020. He reports that he tendered written sick-call requests to Price on April 27, 2020 and May 8, 2020. He asserts that he made verbal requests to Biliter on June 8, 2020 and June 15, 2020. [Record No. 11, p. 12].

2

Price, Plumley, and Billiter now seek dismissal of Wallace's claims based on his failure to exhaust administrative remedies and the expiration of the applicable statute of limitations.

## II

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the petition must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a motion under Rule 12(b)(6), the Court accepts all well-pleaded allegations as true and construes the record in the light most favorable to the non-moving party.

Rule 12(d) provides that, where the Court considers and relies upon matters outside the pleadings, a motion to dismiss under Rule 12 "must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Since the Court has considered the content in exhibits tendered by both the United States and Wallace, the Court converts the Defendants' motion into one for summary judgment. *See Soper v. Hoben,* 195 F.3d 845, 850 (6th Cir.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Webster v. United Auto Workers, Local 51*, 394 F.3d 436, 440 (6th Cir. 2005). In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may do this by demonstrating the absence of evidence to support

an essential element of the nonmoving party's claim. Once this burden is met, the burden shifts to the nonmoving party to produce evidence that would support a jury verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## A

Congress enacted the Prison Litigation Reform Act ("PLRA") in 1996 to "reduce the quantity and improve the quality" of lawsuits filed by prisoners. *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). To help achieve these objectives, the PLRA requires a prisoner to exhaust his or her available administrative remedies before bringing a federal action concerning prison conditions. 42 U.S.C. § 1997e(a). To comply with the PLRA's exhaustion requirement, inmates must take "advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review it and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). Further, prisoners are required to exhaust their administrative remedies with respect to each allegation against each defendant to satisfy the exhaustion requirement. *See Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Curry v. Scott*, 249 F.3d 493, 504-05 (6th Cir. 2001). The respondents argue that Wallace did not exhaust his administrative remedies and thus his Complaint should be dismissed.

There is a four-step administrative grievance procedure for inmates housed in federal prisons. First, an inmate must initiate the grievance process by requesting an informal resolution from the prison official whose area of responsibility is most related to the grievance. 28 C.F.R. § 542.13. If the inmate is dissatisfied with the response, or if there is no response, the inmate may file a BP-9 form with the staff member of the institution who is designated to receive such

requests. 28 C.F.R. § 542.14. If the inmate still is not satisfied, he or she must use a BP-10 form to file an appeal with the Regional Director. 28 C.F.R. § 542.15. An inmate who is not satisfied with the Regional Director's response (or lack thereof) may appeal by submitting a BP-11 form to the General Counsel. 28 C.F.R. § 542.15. The General Counsel's written response to the inmate's appeal is the final decision of the grievance.

In support of their motion to dismiss, the Defendants have provided the Declaration of Robin Eads, a paralegal at the Consolidated Legal Center at the Federal Medical Center in Lexington, Kentucky. [R. 47-1, pp. 2-3]. Eads has access to records maintained by the BOP, including records contained in the Inmate Central File and SENTRY, a computer database that includes inmates' administrative remedy histories. *Id.* at 2. Eads reports that since April 2020, Wallace has properly completed the administrative remedy process for three grievances, which were assigned identification numbers 1050749, 1136142, and 1133907. *Id.* at 3. Respectively, these involved Wallace's allegations concerning staff failure to protect him from assault; a request to have his sentence computation updated; and inadequate medical treatment for complaints of ear pain at USP Canaan, in Waymart, Pennsylvania. *Id.*

In his response to the Defendants' motion to dismiss, Wallace concedes that he did not exhaust the BOP administrative remedy program with respect to his claims against Price, Plumley, and Billiter. However, he argues that his failure to do so should be excused because prison officials intimidated him and thwarted his efforts to exhaust administrative remedies. [R. 56]. First, Wallace represents that "Counselor Horn" attempted to cover up excessive uses of force against him in April and May 2020 by refusing to provide him with grievance forms. [*See* Record No. 11-5]. However, Horn provided him with a grievance form on or about May 14,

5

2020, and he filed a grievance on that date.[2] The grievance touched on various issues, including excessive force, and Wallace mentioned that "medical" did not provide him with an x-ray until May 13, 2020, even though he had complained of pain earlier. [R. 11-2, p. 2]. Wallace also claims that on May 19, 2020, he gave Horn two BP-8 forms complaining that he was denied medical treatment following "the unnecessary use of force" on April 16, 2020, and "after [he] missed more than nine meals" on May 18, 2020. [R. 11-5, pp. 3-4].

Wallace alleges that on May 21, 2020, a group of officers forced him to strip naked, threw him to the ground, and verbally and physically abused him. [R. 11, p. 6]. That same day, he filed another grievance complaining of excessive force but it was not answered. *Id.* In his response to the Defendants' Motion to Dismiss, Wallace reports for the first time that, after the May 21, 2020, incident, staff members "retaliat[ed] against him to deter him from exhausting his remedies and appealing his conviction." [R. 56, p. 13]. These efforts included "writing him up for false incident reports, giving him food tray with dirt in the food, and attempting to cause plaintiff to get in cell fights with his cellmates." *Id.* According to Wallace, "it was part of their intimidation tactics to thwart and deter [him] from taking advantage of his grievance process."

Construing the record in Wallace's favor, the United States has satisfied its burden of demonstrating that Wallace did not exhaust administrative remedies with respect to his claims against Defendants Price, Plumley, and Billiter. *See Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) (observing that "[n]on-exhaustion is an affirmative defense under the PLRA, with the burden of proof falling on the [defendant]") (quoting *Risher v. Lappin*, 639 F.3d 236, 239 (6th

---

[2] This grievance was rejected on May 21, 2020, because Wallace sent it to the Regional Appeals Office rather than first filing a BP-9 request through the institution. [R. 11-4, p. 2]. Wallace contends that, on June 11, 2020, he "handed Case Manager Adkins a BP-8 attempting to refile on the matter and that grievance was never answered." [R. 11-5, p. 3]

6

Cir. 2011)).  As an initial matter, Wallace makes numerous claims that his requests for administrative relief were not answered.  However, to the extent Wallace simply stopped pursuing administrative remedies based on the lack of a response at a lower level, that is not permissible, as the lack of a response amounts to a denial.  *See Galvin v. Sepanek*, 12-CV-119-HRW, 2014 WL 4230467, at *1 n.1 (E.D. Ky. Aug. 25, 2014) (observing that the lack of a response from the BOP is deemed a denial of the prisoner's administrative remedy request) (citing 28 C.F.R. § 542.18).  Thus, Wallace was required to pursue any available administrative appeals of those deemed denials.  *See id.*

The Court turns to Wallace's claims that prison officials thwarted his ability to exhaust administrative remedies.  Although the PLRA's exhaustion requirement is construed strictly, compliance will be excused when remedies are not available.  *Lamb*, 52 F.4th at 292 (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  The Supreme Court has identified three situations in which administrative remedies are not "available" to prisoners and thus exhaustion is not required.  *Id.*  First, "'when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers are unable or consistently unwilling to provide any relief to aggrieved inmates'"; second, when "'some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it' because it is 'so opaque' or 'so confusing'"; and third, "'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'"  *Id.* at 292-93 (quoting *Ross*, 578 U.S. at 643-44).

Wallace contends that, beginning on or about May 21, 2020, correctional officers at USP Big Sandy wrote him up for false incident reports, gave him one or more food trays containing dirt, and tried to cause him to fight with other inmates in retaliation for Wallace filing

7

administrative grievances. To be sure, this type of conduct could reasonably thwart an ordinary inmate from taking advantage of the grievance process. *See Gilmore v. Ormond*, 2019 WL 8222518, at *2 (6th Cir. Oct. 4, 2019). However, the Court notes that Wallace filed grievances at USP Big Sandy on May 21, 2020, June 11, 2020, and September 25, 2020, and did not include his medical-care claims against Price, Plumley, and Billiter. Wallace's filing of these three grievances is not conclusive evidence that "he was able to file all relevant grievances or that he was not prevented from filing timely grievances." *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012). However, the fact that he was able to file multiple grievances against the very officers he claims subjected him to physical abuse cuts against his claim that he was unable to file grievances against providers who he believed had ignored his medical needs. *See Sango v. Fleury*, 2022 WL 2163519, at *2 (6th Cir. May 4, 2022) (explaining that plaintiff's claim that he was unable to utilize grievance system was belied by his record of 15 grievances).

Notably, Wallace was transferred out of USP Big Sandy by September 30, 2020. This was approximately one month after this Court dismissed his Complaint in Pikeville Civil Action No. 7:20-cv-00095-GFVT, with instructions to exhaust administrative remedies. The fact that a plaintiff is transferred to a new institution after the incidents that form the basis of his Complaint does not excuse his obligation to exhaust administrative remedies. *Ramsey v. Kenton Cnty. Det. Ctr.*, Civil Action No. 06-54-WOB, 2006 WL 8445389 (E.D. Ky. June 6, 2006) (collecting cases). Wallace has alleged no barrier to his ability to pursue administrative remedies after leaving USP Big Sandy—nor could he, since he filed at least four administrative grievances and two claims under the Federal Tort Claims Act after arriving at USP Pollock. And while those grievances raised issues that had allegedly occurred at USP Big Sandy, none of them raised claims concerning medical staff. At bottom, Wallace was required to exhaust administrative

8

remedies with respect to his claims against Price, Plumley, and Billiter, and those remedies were available to him upon his transfer to USP Pollock, at the very latest.

Wallace's claims will be dismissed with prejudice. Because the judicially-crafted remedy under *Bivens* does not include a statute of limitations, federal courts apply the most analogous statute of limitations from the state where the events giving rise to the cause of action occurred. The alleged events at issue occurred in Kentucky and, for constitutional torts committed in Kentucky, a one-year statute of limitations applies. *See Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003). A claim accrues and the statute of limitations begins to run when a plaintiff knows or has reason to know through the exercise of reasonable diligence, of the injury providing the basis of the claim. *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005). The statute of limitations is tolled while the prisoner exhausts the administrative remedy process, provided the prisoner acts in a timely and diligent manner. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Construing the record in the light most favorable to Wallace, he did not pursue his administrative remedies diligently with respect to his claims against Price, Plumley, and Billiter. Since each of Wallace's claims against these Defendants is based on the Defendant's failure to provide medical care to him on various dates in 2020, the one-year statute of limitations has long expired.

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. The United States' motion to dismiss, converted to a motion for summary judgment pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, **[R. 47]** is **GRANTED**.

9

2.      **JUDGMENT** shall be entered contemporaneously with this Memorandum Opinion and Order; and

3.      This matter is **DISMISSED** and **STRICKEN** from the Court's active docket.

This the 20th day of November, 2024.

Gregory F. Van Tatenhove
United States District Judge